IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

DAVID HALL,

        Plaintiff,

v.                                          Civil Action 2:21-cv-1135
                                            Chief Judge Algenon L. Marbley
                                            Magistrate Judge Kimberly A. Jolson

ANNETTE CHAMBERS SMITH, et al.,

        Defendants.

## REPORT AND RECOMMENDATION AND ORDER

This matter is before the Undersigned on Defendants Annette Chambers Smith's and Cynthia Mausser's Motion to Dismiss (Doc. 10), and Plaintiff David Hall's Motions for Order to Stop Institution from Opening Legal Mail (Doc. 22) and to Strike (Doc. 23). For the following reasons, the Undersigned **RECOMMENDS** Defendants' Motion be **GRANTED in part** and **DENIED in part**.

More specifically, it is **RECOMMENDED** the following claims be **DISMISSED**: All claims against Defendants in their official capacity; all due process claims; all equal protection claims; any *ex post facto* claims relating to changed parole guidelines; and all retaliation claims. It is further **RECOMMENDED** Plaintiff be permitted to proceed with his *ex post facto* claims relating specifically to the March 22, 2019, amendment of O.R.C. § 2967.193. In addition, Plaintiff's Motions (Docs. 22, 23) are **DENIED**, and it is **RECOMMENDED** Defendant James Bedra be **DISMISSED** from this case.

I.     BACKGROUND

Plaintiff, a *pro se* prisoner currently incarcerated at North Central Correctional Complex ("NCCC"), brings this civil rights action against the Director of the Ohio Department of Rehabilitation and Correction ("ODRC"), Annette Chambers-Smith; Deputy Director of ODRC's

Division of Parole and Community Service, Cynthia Mausser; former ODRC Ohio Parole Board Member Jim Bedra; and John Does, unknown Parole Members, Board Members, or other officials. (Doc. 1).

Plaintiff is currently serving a prison sentence of twenty-six years to life for murder and felonious assault. (Doc. 20 at 2). He was convicted of felonious assault while on parole in 1992 and was sentenced to a term of eleven to fifteen years, which was aggregated with his earlier murder conviction. (Doc. 1 at 21). Plaintiff says that since his parole was revoked in 1992, he has been denied parole sixteen times. (*Id*. at 15). He has also filed several other federal lawsuits regarding his parole eligibility. (*Id*. at 10); *see, e.g.*, *Hall v. Sheldon*, No. 2:09-CV-495, 2010 WL 2572117, at *1 (S.D. Ohio June 21, 2010), *report and recommendation adopted*, No. 2:09-CV-495, 2010 WL 2990065 (S.D. Ohio July 29, 2010). In the instant suit, Plaintiff alleges he has been denied parole under racist parole guidelines and out of retaliation for his litigation. (*Id*. at 13). He also alleges Defendants unlawfully applied changing parole guidelines and statutes in violation of the *ex post facto* clause of the Constitution. (*Id*. at 15).

Defendants Annette Chambers Smith and Cynthia Mausser moved to dismiss on procedural and substantive grounds. (Doc. 10). The Motion is fully briefed and ripe for resolution. (*See* Docs. 10, 18, 20).

II.     STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure requires that a complaint "state a claim to relief that is plausible on its face" to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 663–64, 678 (2009); *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007). In reviewing the complaint, a court must construe it in favor of the plaintiff and accept all well-pleaded factual allegations as true. *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (emphasis added) (citing *Twombly*, 550 U.S. at 556). On the other hand, a complaint that consists of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient. *Twombly*, 550 U.S. at 555; *see also Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) (noting that a plaintiff must give specific, well-pleaded facts, not just conclusory allegations). In other words, while "detailed factual allegations" are not required under Fed. R. Civ. P. 8(a)(2)'s "short and plain statement" rule, the law "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 677–78 (quotation marks and citations omitted).

Although *pro se* complaints are to be construed liberally, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), "basic pleading essentials" are still required, *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). Stated differently, "[t]he requirement for liberal construction . . . does not translate to ignoring a clear failure in the pleading to allege facts which set forth a cognizable claim." *Kidd v. Neff*, No. 1:12-cv-40, 2012 WL 4442526, at *2 (E.D. Tenn. Sept. 25, 2012 (dismissing *pro se* plaintiff's "incredibly vague" complaint), *see also Smith v. Breen*, No. 09-2770, 2010 WL 2557447, at *6 (W.D. Tenn. June 21, 2010) (collecting cases). Ultimately, to avoid dismissal, a plaintiff's complaint "must contain either direct or inferential allegations with respect to all the material elements" of each claim. *Wittstock v. Mark A. Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003) (citing *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003)).

### III. DISCUSSION

Defendants argue Plaintiff's Complaint should be dismissed because "there is no law to support the claims made, [] the facts alleged are insufficient to state a claim, [and] on the face of the complaint there is an insurmountable bar to relief." (Doc. 10 at 4). Specifically, Defendants

make five plausible arguments in support of dismissal: (1) Plaintiff's official capacity claims against Defendants are barred by sovereign immunity; (2) because Plaintiff does not have a constitutionally protected liberty interest in parole, he is unable to state a viable due process claim; (3) Plaintiff's equal protection claims fail because he has made no attempt to show he was treated differently than similarly situated non-protected individuals; (4) Plaintiff's *ex post facto* claims fail because he has not been disadvantaged by the use of the policy at issue; and (5) since Plaintiff offers only "vague and conclusory" statements in support of his retaliation claims, those too must be dismissed. (*See generally id*.). The Undersigned considers each argument in turn.

Before that, however, the Court briefly addresses an issue with Plaintiff's Opposition (Doc. 18) to Defendants' Motion to Dismiss. In opposing the Motion, Plaintiff seems to assert a new claim for relief. He claims he was falsely imprisoned because "there [is] no colorable basis for his confinement[.]" (*See* Doc. 18 at 7–9). As Defendants correctly note, because "Plaintiff did not make [any] such allegations in his Complaint, [he] is prohibited from raising new allegations . . . in his [o]pposition[.]" (Doc. 20 at 2 (citing *Stepler v. Warden, Hocking Corr. Facility*, No. 2:12-CV-1209, 2013 WL 3147953, at *2 (S.D. Ohio June 18, 2013)). Accordingly, because "[a] non-moving [] plaintiff may not raise a new legal claim for the first time in response to the opposing party's motion to dismiss[,]" the Undersigned **RECOMMENDS** Plaintiff's newly asserted false imprisonment claim be **DISMISSED without prejudice**. *See Berryman v. Sampson*, 110–CV–12169, 2011 U.S. Dist. LEXIS 146888, at *21 (E.D. Mich. Sept. 8, 2011).

**A. Immunity**

In his Complaint, Plaintiff seeks both monetary and injunctive relief from Defendants in their official and individual capacities. (*See* Doc. 1 at 3 (naming Defendants in both their official and individual capacities); *id*. at 17 (seeking injunctive relief, in addition to $500,000 in

4

compensatory damages and $80,000 in punitive damages)). Defendants argue they are immune from lawsuits against them in their official capacities. (Doc. 10 at 13–14). They are correct.

"Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute." *Goree v. Mich. Parole Bd.*, No. 1:19-CV-395, 2019 WL 2710134, at *2 (W.D. Mich. June 28, 2019), *aff'd*, No. 19-1817, 2019 WL 7606229 (6th Cir. Nov. 15, 2019), *cert. denied*, 140 S. Ct. 2835, 207 L. Ed. 2d 163 (2020) (citing *Penhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994)). This is because "'a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself.'" *Pullen v. Caldwell*, No. 3:20-CV-198, 2021 WL 2952776, at *3 (S.D. Ohio July 14, 2021) (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)).

Defendants are employees of ODRC, which is an arm of the state. *See Garcia v. Lorain Cnty. Ct. of Common Pleas*, No. 1:18-CV-00944, 2019 WL 1755649, at *3 (N.D. Ohio Apr. 19, 2019) (noting that ODRC is an arm of the state). And Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Goree*, 2019 WL 2710134, at *2 (citing *Quern v. Jordan*, 440 U.S. 332, 341 (1979)), nor has Ohio waived immunity in federal court, *Pullen v. Caldwell*, No. 3:20-CV-198, 2021 WL 2952776, at *3 (S.D. Ohio July 14, 2021) (citing *Stayner v. Ohio Dep't of Rehab. & Corr.*, No. 2:09-cv-752, 2010 WL 2620586, at *3 (S.D. Ohio June 25, 2010). So the Eleventh Amendment bars Plaintiff's suit against Defendants in their official capacities, and it is **RECOMMENDED** that those claims be **DISMISSED**.

  **B. Due Process**

5

While difficult to follow, Plaintiff's due process claims appear to fall into two categories. The first concerns the revocation of his parole in 1992. (*See* Doc. 1 at 12–13). The second is about ongoing parole denials. (*See generally id*.).

1. *1992 Parole Revocation*

Plaintiff alleges he did not receive a hearing in 1992 and "refused to sign [a] waiver form, [and] his sentence of 11 to 15 yrs. was changed to 26 to life." (Doc. 1 at 12). Because he did not "waive his right to a revocation hearing," Plaintiff says his due process claims have merit. (*Id*.). Regardless of the substance of any such allegation, Defendants argue that the statute of limitations has long since lapsed with regard to any claim about Plaintiff's 1992 parole revocation. The Undersigned agrees.

In Ohio, there is a two-year statute of limitations on claims raised under § 1983. *Browning v. Pendleton*, 869 F.2d 989, 991 (6th Cir. 1989) (noting that Ohio's two-year statute of limitations for personal injury claims applies to § 1983 actions). The statute of limitations begins to run when the plaintiff knew or should have known of the injury forming the basis of his claims. *Jefferson v. Mohr*, No. 2:16-CV-0369, 2017 WL 194350, at *3 (S.D. Ohio Jan. 17, 2017), *report and recommendation adopted*, No. 2:16-CV-369, 2017 WL 2992506 (S.D. Ohio July 13, 2017). So, after Plaintiff "refused to sign [a] waiver form" for his revocation hearing, he had until 1994 to bring his claim. *Jefferson*, 2017 WL 194350, at *3. His attempt to do so decades later fails. It is thus **RECOMMENDED** that Plaintiff's substantive and procedural due process claims concerning his 1992 parole revocation be **DISMISSED** as time-barred.

2. *Ongoing Parole Denials*

Plaintiff goes on to allege that Defendants have further violated his right to due process by repeatedly and continually denying him parole. (Doc. 18 at 13). Although Plaintiff alleged

6

procedural defects with regard to his 1992 parole revocation, he asserts only substantive due process violations in regard to these ongoing parole denials.  Defendants respond that "[b]ecause Ohio law does not create a protected liberty interest in parole, Plaintiff is unable to state a viable § 1983 due process claim[.]"  (Doc. 10 at 5).  Ultimately, the Undersigned agrees with Defendants, but their treatment of the matter is too perfunctory.  (*See id*. (cursorily stating that parole-related matters cannot give rise to due process claims)).

There is no "constitutional or inherent right to be conditionally released before the expiration of a prison sentence."  *Palmer v. Granholm*, No. 1:06-CV-301, 2006 WL 1876973, at *3 (W.D. Mich. July 5, 2006) (citing *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979).  "A liberty interest is present only if state law entitles an inmate to release on parole."  *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991).  The law is clear.  Prisoners in Ohio are not inherently entitled to parole.  *Buhrman v. Wilkinson*, 257 F. Supp. 2d 1110, 1121 (S.D. Ohio 2003), *supplemented*, No. 3:01 CV 359, 2004 WL 2044055 (S.D. Ohio Jan. 22, 2004), *report and recommendation adopted*, No. 3:01 CV 359, 2004 WL 2044056 (S.D. Ohio Mar. 2, 2004) (citing Ohio Rev. Code § 2967.03; *State ex rel. Blake v. Shoemaker*, 446 N.E.2d 169, 170 (1983)); *see also Jergens v. Ohio Dep't of Rehab. & Corr. Adult Parole Auth.*, 492 F. App'x 567, 570 (6th Cir. 2012) (quotation marks and citation omitted) (noting that "Ohio has not created a liberty interest in parole eligibility, as it has a completely discretionary parole system").  Still, "in an appropriate case, a parole board's reliance on unconstitutional factors—or even on false information in the parole file—*could* constitute a due-process violation."  *Jergens*, 492 F. Appx 567 at note 5 (emphasis added).  The question, therefore, is whether the instant action is one such "appropriate case."

7

Plaintiff alleges that he has been denied parole repeatedly because he is Black. (*See generally* Doc. 1). In support, he states that Defendant Smith has "implemented a new policy, personally, which discriminates against African American prisoners . . ." (Doc. 1 at 4). He further alleges that she "systematically denies parole to convicts who are of African American race . . ." (*Id*. at 5; *see also id*. at 14 (alleging that Defendant Smith implements "a policy that grants or denies parole, based solely upon race"). He says that Defendants are doing this to achieve racial balance in a "failed prison system." (*Id.* at 4). If true, these accusations are very concerning. But Plaintiff offers no supporting factual allegations. For example, Plaintiff does not identify the policy that is leading to his discrimination nor does he provide allegations about how Defendants are using race to achieve this supposed balance.

Plaintiff's conclusory accusations, standing alone, are not enough. To state a claim for relief under § 1983, "'a plaintiff must plead that each Government-official defendant, through the official's own conduct has violated the Constitution.'" *Smith v. Heyns*, No. 12-11373, 2013 WL 3944474, at *7 (E.D. Mich. July 31, 2013) (quoting *Iqbal*, 556 U.S. at 663). Importantly, a plaintiff "'must allege facts, not simply conclusions.'" *Heyns*, 2013 WL 3944474, at *7 (quoting *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir.1998) (per curiam)). Plaintiff's statements that race is being used to decide parole status is an unsupported conclusion. Conclusory accusations of racist conduct, without complementary factual allegations, fail to state a claim under § 1983. As a result, it is **RECOMMENDED** these claims be **DISMISSED**.

C. **Equal Protection**

Next, Plaintiff argues that by repeatedly denying him parole solely because of his race, Defendants deprived him of equal protection of the law. (Doc. 1 at 5). In support, he alleges that Defendants have "implement[ed] a policy that grants or denies parole, based solely upon race, to

8

attempt to equal out the racial balance in the prison system." (*Id*. at 14). Ultimately, the Undersigned again finds Plaintiff has failed to provide factual details supporting this conclusory allegation.

First, however, the Court notes that, as with his due process claims, Plaintiff's equal protection claims are cognizable only if they are timely. So to the extent Plaintiff is asserting an equal protection claim based on a parole denial that occurred prior to 2019, any such claim is time-barred, and it is **RECOMMENDED** it be **DISMISSED**.

As for Plaintiff's timely claims, "[t]he Equal Protection Clause of the Fourteenth Amendment provides that a state may not 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *Palmer*, 2006 WL 1876973, at *5 (quoting U.S. Const., amend XIV). In order to state an equal protection claim under § 1983, a plaintiff "must allege that a state actor intentionally discriminated against [him] because of his membership in a protected class." *Carnes v. Engler*, 76 F. App'x 79, 81 (6th Cir. 2003). So not only must Plaintiff show he was intentionally discriminated against, but he must also show that he was treated differently than other "similarly situated individuals." *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986).

Here, Plaintiff offers a number of conclusory allegations, none of which have factual support for a claim that he suffered intentional discrimination or that he was treated differently than other "similarly situated individuals." For example, Plaintiff alleges that "African American prisoners are routinely denied parole, (even in situations where African American[s] have significantly less-serious crimes and better histories than that particularized Caucasian person), while granting the Caucasian person a parole simply to maintain some sense of racial balance." (Doc. 1 at 5). In addition, he alleges that this discriminatory policy is "provable by way of

9

calculating the Caucasians and African American[s] paroled within last 29 years." (*Id*. at 14). Plaintiff alleges that this calculation will show that "significantly more Caucasians persons [are] being paroled than African American prisoners." (*Id*.). Despite these conclusions, Plaintiff does not offer any further factual bases for these claims.

To sufficiently state this claim, Plaintiff could have detailed how a specific, similarly situated white prisoner was granted parole when he was denied parole. For example, in *Slakman v. Buckner*, 434 F. App'x 872 (11th Cir. 2011), the plaintiff's equal protection claim withstood a motion to dismiss where he "identifie[d] two paroled individuals whom . . . were [allegedly] treated more favorably than him on account of race." 434 F. App'x 872 (11th Cir. 2011). To support his equal protection claim, the plaintiff provided the following factual allegations:

> The complaint provides that the comparators are black males, while [the plaintiff] is a white male. At the time the comparators were paroled, they had been incarcerated for 14 years and 15 years, respectively, while [the plaintiff] had been incarcerated for 15 years at the time he was denied parole in 2008. The comparators were convicted of malice murder with possession of a firearm during commission of a crime, and felony murder with possession of a firearm during commission of a crime. [The plaintiff] was convicted of aggravated assault and murder. [The plaintiff] received a college education and worked for 24 years before his conviction, while both of the comparators were not college educated, and one had no regular work history.

*Id.* at 876. "[L]iberally construing" the pro se complaint, the Eleventh Circuit held that the plaintiff had alleged "a facially plausible equal protection claim sufficient to withstand dismissal for failure to state a claim." *Id.*

The same was true in *Wilborn v. Walsh*, 584 F. Supp. 2d 384 (D. Mass. 2008). In that case, the plaintiff, an openly gay man, claimed that he was denied parole despite the fact that similarly situated prisoners who were not openly gay were granted parole during the same time period. In support, he noted that parole board members made statements about his sexual orientation— statements that defendants admitted were ambiguous. *Id.* at 393. Additionally, the plaintiff alleged

that "two prisoners serving life sentences for second degree murder were granted parole at or about the same time that [he] was denied parole, despite one having participated in a 'racially-motivated prison fight' within the previous two years and the other having attacked another prisoner with a weapon causing serious injury within the previous three years." *Id.* at 391. He further alleged that several paroled prisoners had "more troubling disciplinary records, less evidence of rehabilitative or community participation, and lesser support systems available upon release." *Id.* Given the factual content of the allegations, the Court concluded that the claim survived the pleading stage.

Unlike those cases, Plaintiff has not offered any comparators or other factual content to support his conclusions. Accordingly, it is **RECOMMENDED** Plaintiff's equal protection claims arising from parole denials that occurred within the last two years be **DISMISSED**.

### D. Ex Post Facto

Plaintiff next alleges that Defendants violated his rights under the *ex post facto* clause of the Constitution. (Doc. 1 at 15). In support, he claims that Defendant Smith "appl[ied] new criteria and regulations against Plaintiff Hall . . . excluding [his] halftime review and taking away [his] good time credit under the O.R.C. § 2967.19 and 2967.191 . . . which [is a] violation of the *ex post facto* law[.]" (*Id.*).

"Broadly speaking, '[a]n *ex post facto* law possesses two elements: (1) it must apply to events occurring before its enactment, and (2) it must disadvantage the offender affected by it.'" *Hill v. Snyder*, 900 F.3d 260, 266 (6th Cir. 2018) (internal quotation marks omitted) (quoting *Dyer v. Bowlen*, 465 F.3d 280, 285 (6th Cir. 2006)). "The Supreme Court has identified the 'controlling inquiry' to be 'whether retroactive application of the change in [state] law created a sufficient risk

11

of increasing the measure of punishment attached to the covered crimes.'" *Hill*, 900 F.3d at 266 (internal quotation marks omitted) (quoting *Garner v. Jones*, 529 U.S. 244, 250 (2000)).

Defendants, in moving to dismiss, assert that the Sixth Circuit "has ruled [that] Ohio's parole guidelines do not impose increased punishment and thus do not violate the *ex post facto* clause." (Doc. 10 at 5 (citing *Coleman v. Linton*, 238 F.3d 420 (6th Cir. 2000)). They also assert that Ohio's internal parole guidelines are not laws for purposes of the *ex post facto* clause. (*Id*. at 6). This is correct, and to the extent Plaintiff is alleging that any recently changed parole guidelines violate the *ex post facto* clause, it is **RECOMMENDED** that such claims be **DISMISSED**. *See Harris v. Wilson*, No. 1:06 CV 2342, 2006 WL 3803410, at *7 (N.D. Ohio Dec. 26, 2006) (collecting cases and noting that "Ohio's internal parole guidelines are not 'laws' for *ex post facto* purposes because they do not carry the weight of statutory authority and do not absolutely restrict the decisions of parole officials").

But Plaintiff also challenges a specific Ohio law governing "good time" credits, saying that "the deprivation of good time days for a reduction from a prisoner's minimum sentence has resulted in a longer stay in prison . . ." (Doc. 1 at 6 (citing O.R.C. § 2967.19 and 2967.191); *see also id*. at 15)). And "'[t]he retroactive elimination of credits implicates the *ex post facto* clause.'" *Hill*, 900 F.3d at 267 (6th Cir. 2018) (quoting *Hill v. Snyder*, 878 F.3d 193, 211 (6th Cir. 2017)) ("If we focus on the proper question—whether Plaintiffs are disadvantaged by Section 769.25a(6)'s elimination of credits—the answer is apparent. Plaintiffs have suffered an *ex post facto* clause violation because the elimination of credits delays their eligibility for release.").

But it is not clear which amendments to Section 2967.193 of the Ohio Revised Code Plaintiff believes implicate the *ex post facto* clause. The statute has been amended several times, most recently on March 22, 2019. So insofar as Plaintiff's allegations concern that amendment, it

12

is **RECOMMENDED** that he be permitted to proceed with those claims since they are within the two-year statute of limitations. Any claims regarding amendments to the statute before that are untimely, and it is **RECOMMENDED** they be **DISMISSED**. *See, e.g.*, *Richard v. Mohr*, No. 2:13-CV-1013, 2014 WL 868242, at *8 (S.D. Ohio Mar. 5, 2014), *aff'd* (Jan. 23, 2015) (citation omitted) ("[I]nsofar as plaintiffs are asserting ex post facto claims concerning the application of amended parole regulations or guidelines at parole hearings which occurred prior to October 11, 2011, such claims are [time] barred.").

### E. Retaliation

Finally, Plaintiff alleges throughout his Complaint that he is repeatedly being denied parole in retaliation for filing numerous lawsuits against parole board officials. (*See, e.g.*, Doc. 1 at 6 (alleging that, at his 2012 hearing, Defendant Mausser "informed Plaintiff [], that he's been busy filing lawsuits against us Borad [sic] members and [] stated: that you're going to regret ever filing court litigation against us Board members and the DRC and you're going to feel what I'm talking about" and subsequently "received four more years"); *id*. at 8 (alleging that Defendant Bedra "ma[de] sure [to] make him last for his [parole hearings] because he's the one that like to file that [expletive] court litigation against us Board members"); *id*. (alleging that Defendant Bedra said Plaintiff should "thank" himself "for [his] eight years" because, while Plaintiff "has good programming excellent institutional conduct, support from family and community, [] [he] has continue [sic] to file Court litigation against us state officials, and having staff officials fired and lost [sic] of money for state programs due to his Court litigation")).

Again, regarding Plaintiff's allegations of retaliation that took place more than two years ago, it is **RECOMMENDED** those claims be **DISMISSED** as time-barred. As for any claims not

13

barred by the statute of limitations, they are barred by the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994).

"In *Heck*, the Supreme Court held that 'in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid,' a plaintiff proceeding under § 1983 must 'prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.'" *Whipple v. Tenn. Bd. of Paroles*, No. 18-5390, 2019 WL 1804845, at *3 (6th Cir. Jan. 3, 2019) (quoting Heck, 512 U.S. at 468–87). Important here, "*Heck* bars an action 'that calls into question the fact or duration of parole.'" *Whipple*, 2019 WL 1804845, at *3 (alteration omitted) (quoting *Noel v. Grzesiak*, 96 F. App'x 353, 354 (6th Cir. 2004)).

As detailed above, Plaintiff's allegations call into question the fact or duration of parole. (*See* Doc. 1 at 6, 8). He has not alleged that previous decisions "to deny him parole ha[ve] been declared invalid by a state or federal tribunal[.]" *Whipple*, 2019 WL 1804845, at *3. Thus, because his allegations "necessarily impl[y] the invalidity of the decision to deny him parole," they are "barred by *Heck*." *Id*. (citing *Bell v. Ohio Adult Parole Auth.*, 23 F. App'x 478, 479 (6th Cir. 2001)). Accordingly, the Undersigned **RECOMMENDS** these claims be **DISMISSED**. *See, e.g.*, *Smith v. Thalheimer*, No. 2:20-CV-6297, 2021 WL 735250, at *5 (S.D. Ohio Feb. 25, 2021) (finding plaintiff's claims "that he was denied parole because ODRC Parole Board members retaliated against him" were *Heck*-barred because "a victory in this case would require a finding that the parole board acted retaliatorily, thereby casting doubt on the validity of the parole board's decision").

### F. Plaintiff's Other Motions

While the instant Motion to Dismiss was being briefed, Plaintiff filed two motions: a Motion for Order to Stop Institution from Opening Legal Mail (Doc. 22) and a Motion to Strike (Doc. 23). As will be discussed, neither motion has merit and therefore each must be dismissed.

*1. Legal Mail*

In the first Motion (Doc. 22), Plaintiff asks the Court to issue an order preventing the corrections staff at NCCC from "opening up [his] legal mail and deliberately withholding [his] legal mail[.]" (*Id*. at 1). He represents that corrections staff has been interfering with his mail "for months" and have not been "following [their] policy about [his] mail." (*Id*.).

"A prisoner's right to receive mail is protected by the First Amendment, but prison officials may impose restrictions that are reasonably related to security or other legitimate penological objectives." *Sallier v. Brooks*, 343 F.3d 868, 873 (6th Cir. 2003). Here, while Plaintiff argues that his mail was opened in violation of ODRC policy, he does not provide any information regarding the contents of the mail or who specifically opened it. (*See generally* Doc. 22). Importantly, he does not represent any Defendants specifically opened any of his mail. (*Id*.).

To state a cognizable claim, the Court must first find that the mail at issue was "legal mail[.]" *Sallier*, 343 F.3d at 873. Given the deficiencies identified above, the Undersigned cannot make that finding here. *See, e.g., Nicklay v. Brand*, No. 1:08CV330, 2008 WL 4738386, at *2 (W.D. Mich. Oct. 27, 2008) (dismissing claim where plaintiff did not allege that the "alleged incoming 'legal' mail was from a court or attorney or otherwise identifiable as confidential legal mail that would implicate First Amendment rights"). Accordingly, Plaintiff's Motion (Doc. 22) is **DENIED**.

*2. Motion to Strike*

15

Plaintiff next asks the Court to strike Defendants Annette Chambers-Smith's and Cynthia Mausser's Reply (Doc. 20) in support of their Motion to Dismiss. (Doc. 23). Plaintiff argues that the Reply should be stricken, as it contains "baseless allegations" with "no facts or legal documents to support[.]" (*Id*. at 1). Defendants, conversely, argue that "Plaintiff's reliance on Rule 12(f) . . . is misplaced[,]" and regardless, his Motion "is merely based on his conclusory statement and unsupported accusation." (Doc. 24).

Rule 12(f) of the Federal Rules of Civil Procedure provides that the Court may strike from a pleading any immaterial, impertinent, or scandalous allegation. Courts have broad discretion in striking pleadings, but the practice is generally disfavored. Importantly, as Defendants correctly note, "[a] motion to strike applies only to pleadings." *Shell v. Ohio Family Rights*, No. 1:15CV1757, 2016 WL 4523830, at *2 (N.D. Ohio Aug. 29, 2016) (collecting cases and citing Fed. R. Civ. P. 12(f); Fed. R. Civ. P. 7(a)); *see also B & S Transp., Inc. v. Bridgestone Ams. Tire Operations, LLC*, No. 5:13-CV-2793, 2014 WL 3687777, at *1 (N.D. Ohio July 24, 2014) ("A motion to strike applies only to pleadings and is not the proper vehicle for attacking plaintiffs' reply brief."). So Plaintiff's Motion to Strike is patently improper and **DENIED** as a result.

### G. Defendant Bedra

Lastly, the Court addresses Plaintiff's claims against Defendant James Bedra. On June 9, 2021, ODRC filed a notice that "[c]ertified mail addressed to Jim Bedra was accepted in error by the mailroom staff. The individual that is addressed on the envelope no longer works for [ODRC]." (Doc. 14 at 2). Because the final named Defendant remained unserved, the Court ordered Plaintiff "to file a notice or letter . . . containing Defendant Bedra's correct address within twenty-one days." (Doc. 19). In that Order, the Court warned Plaintiff that if he failed to comply the Court would recommend dismissing his claims against Defendant Bedra for failure to prosecute. (*Id*.). As of

the date of this Report and Recommendation, Plaintiff has not filed anything with the Court containing Defendant Bedra's correct address. And the time for doing so has passed.

The Court may dismiss an action for failure to prosecute under its inherent power to control its docket, *see Link v. Wabash R.R. Co.*, 370 U.S. 626, 629 (1962), or under Rule 41(b) of the Federal Rules of Civil Procedure. Rule 41(b) provides, in pertinent part that "[i]f the plaintiff fails to prosecute or comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) ... operates as an adjudication on the merits." The measure is available to the Court "as a tool to effect management of its docket and avoidance of unnecessary burdens on the tax-supported courts and opposing parties." *Knoll v. AT & T*, 176 F.3d 359, 363 (6th Cir. 1999).

The Sixth Circuit directs the district court to consider the following four factors in deciding whether to dismiss an action for failure to prosecute under Rule 41(b):

> (1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered.

*Schafer v. City of Defiance Police Dept.*, 529 F.3d 731, 737 (6th Cir. 2008) (citing *Knoll*, 176 F.3d at 363). "'Although typically none of the factors is outcome dispositive, . . . a case is properly dismissed by the district court where there is a clear record of delay or contumacious conduct.'" *Schafer*, 529 F.3d at 737 (quoting *Knoll*, 176 F.3d at 363).

Since filing this action in March, Plaintiff has twice failed to serve Defendant Bedra properly. (*See generally* Docs. 14, 19). After failing initially, the Court afforded Plaintiff additional time to effect service of process, or at least provide the Court with Defendant Bedra's contact information. (Doc. 19). Yet, Plaintiff still has not properly effected service of process on

Defendant Bedra. He has been afforded well over thirty days to comply with this order or to show cause otherwise. (*Id.*).

In view of the foregoing, the Undersigned concludes that Plaintiff has abandoned his claims against Defendant Bedra. Although this Court has a "favored practice of reaching a disposition on the merits," the Court's "need to manage its docket, the interest in expeditious resolution of litigation, and the risk of prejudice to the defendant" outweigh allowing these claims to linger. *Little v. Yeutter*, 984 F.2d 160, 162 (6th Cir. 1993). Finally, the Undersigned has considered less drastic sanctions than dismissal but concludes that any such effort would be futile given Plaintiff's failure to comply with the Court's Orders. Accordingly, the Undersigned **RECOMMENDS** Defendant James Bedra be **DISMISSED** from this case.

## IV. CONCLUSION

For the following reasons, it is **RECOMMENDED** that Defendants' Motion be **GRANTED in part** and **DENIED in part**.

It is **RECOMMENDED** the following claims be **DISMISSED**: All claims against Defendants in their official capacity; all due process claims; all equal protection claims; any *ex post facto* claims relating to changed parole guidelines; and all retaliation claims. It is further **RECOMMENDED** Plaintiff be permitted to proceed with his *ex post facto* claims relating specifically to the March 22, 2019, amendment of O.R.C. § 2967.193. In addition, Plaintiff's Motions (Docs. 22, 23) are **DENIED**, and it is **RECOMMENDED** Defendant James Bedra be **DISMISSED** from the case.

### Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific

18

proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence, or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.

Date: September 2, 2021                             /s/ Kimberly A. Jolson
                                                    KIMBERLY A. JOLSON
                                                    UNITED STATES MAGISTRATE JUDGE